IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL R. BURNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 11-2152-JDT-tmp |
| | ) | |
| HARLEY G. LAPPIN, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

On February 24, 2011, the *pro se* prisoner Plaintiff, Michael R. Burns, an inmate at the Federal Correctional Institution in Memphis, Tennessee ("FCI Memphis"), filed this action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 403 U.S. 388 (1971). On August 5, 2011, the Court entered an order dismissing portions of the complaint and directing the Clerk to issue process for Defendant, Juan D. Castillo, the former Warden of FCI Memphis, and Dr. Nahem Naimey, the Clinical Director. (D.E. 5.) A motion for summary judgment was then filed on January 24, 2012. (D.E. 18.) Plaintiff filed a response to the motion on February 17, 2012. (D.E. 19.)

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is,

pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[1] or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In Celotex Corp., the Supreme Court explained that Rule 56:

---

[1] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

2

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

Id. at 252; see also Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of

3

the matter. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

In the order of partial dismissal, the Court summarized Plaintiff's allegations:

> Plaintiff alleges that he reported to sick call at FCI Memphis on September 22, 2008, complaining of severe pain in his groin area. He was examined by Defendant Naimey and diagnosed with a severe inguinal hernia, which Naimey stated required immediate attention. On March 4, 2009, the Utilization Review Committee ("URC") at FCI Memphis approved an outside surgical evaluation. (Id. at 3.) Defendants Castillo and Naimey were members of the URC. (Id. at 4.) For reasons that are not explained, Plaintiff's condition was not treated for two years, although he had a cantaloupe-sized bulge in his groin area. (Id. at 4-9.) Although Plaintiff's condition originally could have been treated with a relatively simple procedure, he ultimately required a more complicated and dangerous surgery that resulted in "painfull [sic] life long scars." (Id. at 9.)

(D.E. 5 at 2.) Plaintiff alleges that the Defendants demonstrated deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. However, Defendants seek summary judgment on the grounds that Castillo was not personally involved in any deprivation of Plaintiff's rights and that neither Defendant was violated Plaintiff's rights under the Eighth Amendment. Defendants also contend that they are entitled to qualified immunity.

In support of the motion for summary judgment, Defendants have submitted their sworn Declarations (Naimey Decl., D.E. 18-3; Castillo Decl., D.E. 18-4), and portions of Plaintiff's medical records. (D.E. 18-7, 18-8, 18-9, 18-10, and 18-11.) Plaintiff's response

4

in opposition to the motion is also sworn under penalty of perjury and will be treated as an affidavit. (D.E. 19.)

"The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishments Clause of the Eighth Amendment," Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). "A prisoner's right to adequate medical care 'is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" Id. at 874 (quoting Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001)); see also Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004) ("The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs. . . . Prison officials' deliberate indifference violates these rights '[w]hen the indifference is manifested by . . . intentionally denying or delaying access to medical care . . . ' for a serious medical need.") (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "Although the right to adequate medical care does not encompass the right to be diagnosed correctly, [the Sixth Circuit] has 'long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner.'" Johnson, 398 F.3d at 874 (quoting Danese v. Asman, 875 F.2d 1239, 1244 (6th Cir. 1989)).

An Eighth Amendment claim based on a failure to provide adequate medical care has objective and subjective components. The objective component requires that a prisoner have a serious medical need. Blackmore, 390 F.3d at 895; Brooks v. Celeste, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed

5

by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" Blackmore, 390 F.3d at 897; see also Johnson, 398 F.3d at 874. "[T]he seriousness of a prisoner's medical needs may also be decided by the effect of delay in treatment." Blackmore, 390 F.3d at 897 (emphasis & internal quotation marks omitted); Napier v. Madison Cnty., Ky., 238 F.3d 739, 742 (6th Cir. 2001).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994); see also Wilson v. Seiter, 501 U.S. 294, 297, 302-03 (1991). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303; Helling v. McKinney, 509 U.S. 25, 32 (1993); Woods v. Lecureux, 110 F.3d 1215, 1222 (6th Cir. 1997); Street, 102 F.3d at 814; Taylor v. Michigan Dep't of Corr., 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might

6

well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38 (emphasis added; citations omitted).

With regard to Plaintiff's claims against Defendant Castillo, the complaint first alleges "upon information and belief" that Castillo was part of the Utilization Review Committee ("URC") hearing on March 3, 2009, at which it was determined that Plaintiff would be approved for an outside medical consultation. Therefore, Castillo allegedly was aware of the seriousness of Plaintiff's condition. (D.E. 1 at 6.) However, Castillo states in his affidavit that he was not present at the URC hearing. (D.E. 18-4 ¶ 7.) As Plaintiff himself was not present at the hearing, he has no personal knowledge of whether Castillo was there. He has submitted no evidence refuting the assertion that Castillo was not present at that hearing.

Plaintiff alleges that Castillo was aware of his "ongoing attempts to be given needed treatment through institutional grievances." (D.E. 1 at 6.) However, Castillo states in his Declaration that investigation of all grievances was left to the Administrative Remedy Coordinator and the relevant Department Head, who prepared the institution's response to a grievance. As Warden, all he did was review the responses and sign them; he was not personally involved in the investigations. (D.E. 18-4 ¶ 3.) Castillo also states that he was not responsible for rendering medical care or advice to inmates, but deferred to the judgment of medical professionals. (Id. ¶¶ 4, 7.)

7

Plaintiff concedes in his response that Castillo was not directly responsible for his medical treatment, but he asserts that Castillo is liable because he "was asked to exercise oversight when all other avenues failed Plaintiff." (D.E. 19 at 8.) However, "Bivens liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance." Nwaebo v. Hawk-Sawyer, 100 F. App'x 367, 369 (6th Cir. 2004) (citing Shehee v. Lutrell, 199 F.3d 295, 300 (6th Cir. 1999). Such *respondeat superior* liability is not permissible under Bivens. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Plaintiff also alleges that Castillo was aware of his medical condition because of "face to face requests made to him personally." (D.E. 1 at 6.) However, the only such "face to face" request Plaintiff describes is that he approached Castillo one day on the sidewalk outside the dining hall and "showed him the alarming swelling of his groin through his pants stating that he was in severe pain." Castillo allegedly replied, "you have water on your nuts boy, keep moving." (Id.) Castillo specifically denies making that statement and states that he does not recall ever discussing Plaintiff's condition with him. (Id. ¶¶ 6, 9.)

Even if Castillo made the statement in question, it is insufficient to show that Castillo knew Plaintiff's condition constituted an excessive risk to his health and then disregarded that risk. Castillo is not a physician and could not be expected to determine the seriousness of Plaintiff's condition during that brief encounter.

The Court finds that Plaintiff has failed to demonstrate the existence of a genuine issue for trial regarding whether Castillo, through his own actions, violated the Eighth Amendment. Defendant Castillo is, therefore, entitled to judgment as a matter of law.

In his Declaration, Defendant Naimey describes the treatment that Plaintiff received (D.E. 18-3 ¶¶ 5-33) and states that his medical care was timely, thorough, and appropriate (id. ¶ 34). Naimey further states that any delay in treatment was the result of Plaintiff's own failure to comply with the treatment plan that had been established. (Id. ¶ 14.) He refers to Plaintiff's medical records, primarily Clinical Encounter notes, to support his statements. These treatment notes apparently were intended to be attached as exhibits, but most of them are not actually in the record. In fact, the only four Clinical Encounter notes included as exhibits are dated September 23, 2008, January 20, 2009, April 17, 2009, and April 13, 2010. (D.E. 18-7.) Naimey refers to over twenty more that have not been submitted.

With regard to the alleged delay in treatment, Naimey states that on April 17, 2009, when Plaintiff went to an outside surgery center for evaluation, his blood pressure was elevated. Therefore, Plaintiff was referred back to the prison medical department for evaluation and clearance of his undiagnosed hypertension. (D.E. 18-3 ¶ 12; D.E. 18-7 at 5; D.E. 18-10.) Upon his return to FCI Memphis, Plaintiff was advised to report to Health Services for daily blood pressure checks for seven consecutive days, beginning April 18, 2009. He would then be reevaluated on the seventh day. (D.E. 18-7 at 5.) However, Naimey states that Plaintiff did not return to have his blood pressure checked until April 1, 2010, almost one year later. (D.E. 18-3 ¶ 14.) To support this statement, he offers only

9

Plaintiff's blood pressure log, showing blood pressure readings that were taken from April 1, 2010, to May 20, 2010. (D.E. 18-11.)

In Plaintiff's sworn response, he emphatically denies that he failed to report to have his blood pressure taken, stating that he reported where and when he was instructed. (D.E. 19 at 2-4.) This statement is sufficient to refute Naimey's contrary assertion in his Declaration.[2]

Given the conflicting evidence regarding whether Plaintiff failed to return for daily blood pressure checks as instructed, the failure to submit relevant medical records, and the fact that Plaintiff experienced complications from the surgery he ultimately underwent, the Court finds there are genuine issues of material fact for trial on Plaintiff's claims against Defendant Naimey for denial of adequate medical care. Therefore, Naimey is not entitled to judgment as a matter of law. This conclusion also precludes a grant of qualified immunity.

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED as to Defendant Castillo. However, the motion is DENIED as to Defendant Naimey.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[2] Throughout 2009 and into 2010, Plaintiff continued to pursue grievances attempting to obtain the treatment he believed was necessary (D.E. 1 at 12-21), which suggests he would not have failed to follow up with his treatment plan.